IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ERNESTO A. TRUJILLO,**

      **Plaintiff,**

vs.                                                                                          No.  05cv1347 DJS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Trujillo's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 12]**, filed May 31, 2006, and fully briefed on June 21, 2006.  On June 13, 2005, the Commissioner of Social Security issued a final decision denying Trujillo's application for disability insurance benefits and supplemental security income benefits.   Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Trujillo, now thirty-five years old (D.O.B. February 26, 1971), filed his application for disability insurance benefits and supplemental security income on June 14, 2002 (Tr. 16), alleging disability since August 15, 2001, due to lower back pain, migraine headaches, muscle spasms, leg numbness, and side effects of medication. Tr. 68, 75.  Trujillo has a high school education and past relevant work as a carpenter, laborer and custodian.  Tr. 17.  On June 13, 2005, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Trujillo was not

disabled within the meaning of the Social Security Act because he could return to his past work as a custodian. Tr. 21. As to his credibility, the ALJ found Trujillo's "allegations regarding his limitations [were] not totally credible . . . ." Tr. 20. Trujillo filed a Request for Review of the decision by the Appeals Council. On December 3, 2005, the Appeals Council denied Trujillo's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Trujillo seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States*

*Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Trujillo makes the following arguments: (1) the ALJ's RFC determination does not fully account for his mental limitations; (2) the ALJ erred by not calling a vocational expert; and (3) the ALJ failed to consider his headaches.

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs."  20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).  In order to make the ultimate finding that a claimant is not disabled at step four, the ALJ is required by the agency's rulings to make specific and detailed predicate findings concerning the claimant's residual functional capacity, the physical and mental demands of the claimant's past jobs, and how these demands mesh with the claimant's particular exertional and nonexertional limitations.  *See* SSR 96-8p, 1996 WL 374184, SSR 82-62, at *4; *see also*, *Winfrey v. Chater,* 92 F.3d 1017, 1023-25 (10th Cir.1996).

In this case, the ALJ found Trujillo was not disabled at step four of the sequential evaluation process because he could perform his past relevant work as a custodian.  Specifically, as to the mental component of his RFC determination, the ALJ found:

> In April 2003, Mr. Trujillo experienced an acute anger episode and was briefly hospitalized at a mental health facility.  He admitted that he was drinking at the time of the incident and did not present any psychiatric symptoms to the admitting physician.  Throughout his stay, Mr. Trujillo did not exhibit any symptoms supporting the presence of a mental illness.  He was discharged in good condition after a short stay (Exhibit 8F).
>
> ** ** ** ** **
>
> After the hearing, I arranged for a consultative psychological examination which was performed by Dr. La Court, Ph.D.  A battery of tests were administered which resulted in diagnoses of dysthymic and cognitive disorders, with representative functioning in a mild range of impairment.  Dr. La Court concluded that Mr. Trujillo had moderate limitations in his ability to perform detailed or complex tasks, and to work without supervision, but only mild limitations in his ability to follow short, simple instructions.  He offered moderate limitations in Mr. Trujillo's ability to interact with the public, co-workers and supervisors.  Dr. La Court also assessed moderate limitations in workplace adaptation (Exhibit 12F4).

> \*\* \*\* \*\* \*\* \*\*
>
> Mr. Trujillo made no large mention of mental problems in his hearing testimony. Based upon the singular consultative examination, when his mental status is evaluated under sections 12.02 and 12.04 of the regulations I find no more than "mild" limitations in his activities of daily living. He engages in a wide range of routine activities independently, appropriately, and effectively. <u>Based upon Dr. La Court's findings Mr. Trujillo may have some problems with sustained interpersonal interactions. I therefore find "moderate" limitations in social functioning, with a specific vocational restriction to occupations which are non-public in nature, and do not require extensive interactions with the public, co-workers, and supervisors. Likewise, Mr. Trujillo may not be capable of performing detailed or complex work tasks. However, routine activities are within his capacity. I therefore find "moderate" limitations in concentration, persistence and pace, with a specific vocational restriction to occupations which involve simple repetitive work tasks</u>. No extended periods of decompensation are documented and no section 12.04 "C" criteria are fulfilled. <u>Accordingly, I find that Mr. Trujillo retains a residual functional capacity compatible with the performance of unskilled "medium" work that has minimal social demands</u>.
>
> Based upon Mr. Trujillo's residual functional capacity I must determine whether he can perform any of his past relevant work. The phrase "past relevant work" is defined in the Regulations at 20 C.F.R. §§404.1565 and 416.965. The work usually must have been performed within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity.
>
> The evidence in this case establishes that Mr. Trujillo has past relevant work as a custodian (Exhibit 3E).
>
> Based upon his residual functional capacity, Mr. Trujillo could return to his past relevant work as a custodian. The evidence establishes that he could return to his occupation as previously performed. In addition, he has the ability to do this job as it is generally performed in the national economy. The exertional demands fall within his physical residual functional capacity and <u>such work is simple in nature and does not require extensive interaction with the public, co-workers, or supervisors</u>. As Mr. Trujillo is capable of performing his past relevant I find that he was not under a disability as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§404.1520(f) and 416.920(f).

Tr. 19-20 (emphasis added).

Citing to Social Security Ruling 82-61, Trujillo contends that the ALJ's findings that he can perform "simple, repetitive" work tasks and that he is unable to perform jobs that are detailed or complex, or that require extensive interactions with the public, co-workers and supervisors are not adequate and by their nature require testimony from a vocational expert. The Court

disagrees. Under Social Security Ruling 82-61, in "determining whether or not a claimant retains the capacity to perform his or her past relevant work," the ALJ may employ the following tests: (1) whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it; and (2) whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. SSR 82-61, 1982 WL 31387, at * 1.

In this case, the ALJ determined Trujillo could return to his past relevant work as a custodian "as previously performed" and "as it is generally performed in the national economy." Tr. 20. The ALJ also properly determined that Trujillo's past work as a custodian does not involve mental demands that exceed his mental RFC. The ALJ found Trujillo could perform "unskilled 'medium' work." Tr. 21. The Regulations define unskilled work as work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Trujillo described his job as a school custodian as requiring him to "sweep, move desks, mop, vaccum (sic), dust, clean bathrooms, wash windows, buff tile, on an everyday bases (sic)." Tr. 80. Under the regulations, a claimant's Work History Report "may be sufficient to furnish information about past work." SSR 82-61, 1982 WL 31387, at * 1. Trujillo performed the job of school custodian from June 1993 to November 2001. Tr. 77. Thus, Trujillo performed the job of school custodian for at least eight (8) years. Moreover, Trujillo testified he quit this job due to his inability to do the physical component of the job because of back pain. Tr. 280. Thus, the evidence does not support Trujillo's argument that he "would not be able to work in a non-sheltered environment"due to his cognitive impairment. Pl.'s Mem. in Supp. of Mot. to Remand at 7.

Trujillo also contends the ALJ erred in addressing his "moderate limitation" in concentration, persistence and pace without consulting a vocational expert. *Id.* Trujillo contends the ALJ made an "unsupported conclusion that simple, repetitive work was within his realm of functioning." *Id.* Dr. LaCourt opined Trujillo was **mildly limited** in concentration, persistence and pace. Tr. 252. Dr. LaCourt noted: "sustained concentration/task persistence, for carrying out instructions: mild limitation (based on his scores and on reported work history, looking at mental ability, not specifically physical limitations); attending and concentration: mild limitation." *Id.* However, as noted above, the ALJ found:

> Based upon Dr. La Court's findings Mr. Trujillo may have some problems with sustained interpersonal interactions. I therefore find "moderate" limitations in social functioning, with a specific vocational restriction to occupations which are non-public in nature, and do not require extensive interactions with the public, co-workers, and supervisors. Likewise, Mr. Trujillo may not be capable of performing detailed or complex work tasks. However, routine activities are within his capacity. **I therefore find "moderate" limitations in concentration, persistence and pace, with a specific vocational restriction to occupations which involve simple repetitive work tasks**.

Tr. 19. In *Nixon v. Barnhart*, 49 Fed.Appx. 254 (10th Cir. 2002)(unpublished opinion), the Tenth Circuit cited with approval to *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) for the proposition that an ALJ's description of a claimant as capable of doing simple, repetitive jobs adequately accounted for deficiencies of concentration, persistence and pace. Accordingly, the ALJ properly accounted for Trujillo's moderate limitations in concentration, persistence and pace when he found Trujillo capable of "simple repetitive work tasks." Substantial evidence supports this finding. Because the ALJ found Trujillo not disabled at step four of the sequential evaluation process and based on the facts of this case, the Court finds that the ALJ was not required to consult with a vocational expert.

Finally, Trujillo contends the ALJ failed to consider his headaches. However, in his decision the ALJ noted "[Trujillo] also said that he experienced migraine headaches on almost a daily basis." Tr. 19. The ALJ concluded:

> His description of his headaches and their duration do not sound like the manifestations of actual migraines. Mr. Trujillo has been consistently released to work and has been non-compliant with prescribed treatment. His level of subjective complaints and functional limitations are extremely inconsistent with the objective medical evidence and the opinions of his treating sources and are not fully credited.

*Id.* Trujillo does not challenge the ALJ's credibility determination that he was not fully credible. Moreover, substantial evidence supports the ALJ's finding that Trujillo's headaches were not disabling. *See* Tr. 180 (October 1, 2001, first visit to Dr. Esparza– diagnosed with cervicogenic headache and placed on medium duty work); Tr. 213 (April 8, 2003, Pablo Vigil, M.D., staff physician at Las Vegas Medical Center noted, "The patient was here less than 24 hours and did not have any significant medical conditions whatsoever. It was a situational thing, and he did not have a mental illness."); Tr. 198 (May 14, 2003, Dr. Esparza noted, "I stated that there was nothing in his history, previous findings, or today's exam that would indicate any reason for an MRI of the lumbar spine." Dr. Esparza also refilled Trujillo's Robaxin for muscle spasms and Cafergot for headaches and directed him to return in 6 months.); Tr. 195 (October 29, 2003, Dr. Esparza discontinued the Cafergot and continued the Ultracet); Tr. 240 (June 30, 2004, Dr. Esparza, Trujillo's treating physician, noted "is having occasional headaches" no treatment); Tr. 245 (October 27, 2004, Dr. Esparza wrote to Trujillo's counsel, noting "I cannot justify the use of Darvocet and his pain causing side effects that would require him to nap 2-3x/day."); Tr. 243 (January 28, 2005, Dr. Esparza noted Trujillo "is having some headaches" and diagnosed it as "cervicalgia with **intermittent** headaches." No specific treatment.).

8

The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied. After such review, the Court is satisfied that substantial evidence supports the ALJ's finding at step four of the sequential evaluation process that Trujillo was not disabled. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**